**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **THE BOARD OF SUPERVISORS OF PRINCE WILLIAM COUNTY, VIRGINIA,**<br><br>             **Plaintiff,**<br><br>      **v.**<br><br>**PURDUE PHARMA, L.P.,** *et al.*,<br><br>             **Defendants.** | **Civil Action No. 1:19cv365** |

<u>**PLAINTIFF'S MOTION TO REMAND**</u>
<u>**AND INCORPORATED MEMORANDUM OF LAW**</u>

COMES NOW, the Plaintiff, by and through the undersigned attorneys, and hereby submits this Motion to Remand and Incorporated Memorandum of Law. Defendants' removal on diversity grounds is baseless and improper. The Plaintiff has filed an individual action seeking the damages it alone has suffered because of Defendants' purposeful and unlawful acts that have foreseeably caused harm to the Plaintiff. For the reasons set forth herein, the Court should promptly remand this action back to state circuit court where it belongs.

<u>**INTRODUCTION**</u>

Plaintiff filed this suit in state circuit court seeking injunctive relief and damages for the harm caused to it, in its own right, by opioid manufacturers, distributors, and pharmacy benefit managers. The claims asserted are Plaintiff's alone. Plaintiff seeks to recover the costs it has incurred and continues to incur as a direct result of Defendants' purposeful scheme to facilitate and profit from improper opioid utilization.

Defendants Endo Pharmaceuticals Inc. and Endo Health Solutions Inc. (collectively, the "Removing Defendants"), removed Plaintiff's claim to federal court using arguments that have been repeatedly rejected across the country in similar cases related to the opioid epidemic.

A timely ruling upon this Motion to Remand is essential. Rather than litigate these claims in the forum of Plaintiff's choosing, the Removing Defendants' end game is, via removal, to force Plaintiff into Multidistrict Litigation Docket No. 2804 pending in the Northern District of Ohio. However, this is not the Removing Defendants' choice to make. Indeed, the Judge presiding over the MDL has repeatedly acknowledged the reality and efficacy of parallel state proceedings. *See, e.g.*, *In re: Nat'l Prescription Opiate Litig.*, Case No. 1:17-md-2804, Case Management Order No. 1, ECF No. 232, p. 11 (Apr. 11, 2018) ("The Court acknowledges it has no jurisdiction over related State court proceedings.")  This case was properly filed in Virginia state court, and Plaintiff should not be involuntarily swept up in the massive federal MDL.

The Plaintiff's Motion to Remand should be granted because there is a lack of complete diversity in this case.  Thus, for the reasons discussed herein, the Plaintiff asks this Court to reject the Removing Defendant's arguments, remand this matter back to Virginia state court, and award the Plaintiff its costs and fees associated with this Motion.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The public health crisis caused by the opioid epidemic is no accident. It is the foreseeable consequence of the intentional acts and negligence of the named Defendants in this case. Their purposeful scheme to increase opioid utilization through fraudulent marketing, distribution, and

---

[1] As the Removing Defendants readily acknowledge, they were not yet actually served with the Summons or Complaint in this case. Whether such pre-service removal is even effective in the first instance is an open question. Regardless of the efficacy of the removal, however, for the reasons discussed below, the removal is defective because this Court does not have jurisdiction over the claims made in the Complaint.

reimbursement of prescription opioids ("opioids") has predictably resulted in an explosion of addiction, overdose and the accompanying foreseeable consequences. Localities such as Plaintiff have been forced to allocate precious public resources to address the direct harms suffered as a result: increased burden on law enforcement, public health services, the court system, the foster care system, education – virtually every facet of government administration is adversely impacted by the epidemic.

In light of these facts, the Plaintiff brought suit to recover damages based on the numerous costs it has incurred as a result of the Defendants' misconduct. In its Complaint, Plaintiff seeks to abate the public nuisance caused by the opioid epidemic and to recoup monies spent and costs incurred as a result of Defendants' purposeful conduct to increase opioid utilization.

The Plaintiff brings this action against four classes of Defendants – each of whom played an essential part in the opioid epidemic in Plaintiff: (1) the Manufacturer Defendants who produced the drugs at issue[2], (2) the Distributor Defendants who turned a blind eye to the drugs' movement[3],

---

[2] The Manufacturer Defendants include PURDUE PHARMA, L.P.; PURDUE PHARMA, INC.; THE PURDUE FREDERICK COMPANY, INC.; RHODES PHARMACEUTICALS, L.P.; ABBOTT LABORATORIES; ABBOTT LABORATORIES, INC.; ABBVIE INC.; MALLINCKRODT PLC; MALLINCKRODT LLC; SPECGX LLC; ENDO HEALTH SOLUTIONS, INC; ENDO PHARMACEUTICALS, INC.; PAR PHARMACEUTICAL COMPANIES, INC.; PAR PHARMACEUTICAL, INC.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; BARR LABORATORIES, INC.; WATSON LABORATORIES, INC.; ACTAVIS PHARMA, INC.; ACTAVIS, LLC; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC.; ALLERGAN PLC; ALLERGAN FINANCE, LLC; INSYS THERAPEUTICS, INC.; KVK-TECH, INC.; AMNEAL PHARMACEUTICALS LLC; IMPAX LABORATORIES, LLC; AMNEAL PHARMACEUTICALS, INC.; AMNEAL PHARMACEUTICALS OF NEW YORK, LLC; and MYLAN PHARMACEUTICALS, INC.
[3] The Distributor Defendants include McKESSON CORPORATION, MCKESSON MEDICAL-SURGICAL INC., CARDINAL HEALTH, INC., AMERISOURCEBERGEN CORPORATION, HENRY SCHEIN, INC., GENERAL INJECTABLES & VACCINES, INC., INSOURCE, INC., CVS HEALTH CORPORATION, CVS PHARMACY, INC., CVS TN DISTRIBUTION, L.L.C., WALGREENS BOOTS ALLIANCE, INC., and WALGREEN CO.

(3) the Pharmacy Benefit Manager ("PBMs") Defendants who ensured the drugs' reimbursement[4], and (4) Doe Defendants 1 to 100 who played other assorted roles geared towards maximizing improper opioid use ("Doe Defendants"). (Compl. ¶¶ 3-5, 28-199.)

The Complaint seeks compensatory and punitive damages, treble damages pursuant to statute where appropriate, and alleges causes of action under Virginia law for: (1) public nuisance in violation of Virginia Code § 15.2-900, (2) common law public nuisance, (3) violations of the Virginia Consumer Protection Act, Virginia Code § 59.1-196, *et. seq.*, (4) fraud, (5) common law civil conspiracy, (6) negligence per se (against the Manufacturer Defendants), (7) negligence per se (against the Distributor Defendants), (8) negligence, (9) gross negligence, (10) willful and wanton negligence, and (11) unjust enrichment.

The Removing Defendants have removed this case alleging only diversity jurisdiction.  As discussed below, Removing Defendant's arguments lack merit and the Court should grant the Plaintiff's Motion to Remand.

## **STANDARD OF REVIEW**

Federal courts are courts of limited jurisdiction. "The threshold question in any matter brought before a federal court is whether the court has jurisdiction to resolve the controversy involved." *17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 591 (E.D. Va. 2005). Section 1441(a) of Title 28 of the United States Code permits a defendant to remove an action to federal district court, but only if the plaintiff could have brought the action in federal court originally. 28 U.S.C. § 1441(a). "[T]he removal statute allows defendants to remove a case

---

[4] The PBM Defendants include EXPRESS SCRIPTS, HOLDING COMPANY, EXPRESS SCRIPTS, INC., CVS HEALTH CORPORATION, CAREMARK RX, L.L.C., CAREMARKSPCS HEALTH, L.L.C., CAREMARK, L.L.C., UNITEDHEALTH GROUP INCORPORATED, OPTUM, INC., and OPTUMRX, INC.

to federal court only if 'the district courts of the United States have original jurisdiction' over it." *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (citing 28 U.S.C. § 1441(a)).

Courts typically must "construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated" by it. *Maryland Stadium Auth. v. Ellerbe Becket Inc*., 407 F.3d 255, 260 (4th Cir. 2005) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). Furthermore, "[t]he burden of demonstrating jurisdiction resides with 'the party seeking removal.'" *Id.* Thus, in deciding whether to remand, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (citation omitted). Indeed, even in cases involving removal under CAFA, "[t]he burden of establishing federal jurisdiction for a class or mass action under CAFA is on the removing party." *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 390 (4ᵗʰ Cir. 2012).

Where the removing party invokes diversity jurisdiction, it is that party's burden to demonstrate that diversity is "complete" – i.e., "that no defendant in the case is a citizen of the same state as any plaintiff." *Mayor of Balt. v. Purdue Pharma L.P.*, Civil Action No. GLR-18-800, 2018 U.S. Dist. LEXIS 70082, at *10 (D. Md. Apr. 25, 2018); *Mulcahey*, 29 F.3d at 151.

And when a defendant seeks removal alleging fraudulent joinder, the "party alleging fraudulent joinder bears a ***heavy burden***." *Hartley*, 187 F.3d at 424 (emphasis added). In fact, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999). Fraudulent joinder "must be proved by ***clear and convincing evidence*** consisting of facts rightly leading to that conclusion, apart from the deductions of the pleader." *Rinehart v. Consolidation Coal Co.*, 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987) (emphasis added).

In determining whether a party has been fraudulently joined, "[a]ll factual allegations must be evaluated in the light most favorable to the [non-removing party], resolving all contested issues of substantive fact in favor of the [non-removing party]." *Rinehart*, 660 F. Supp. at 1141. Further, the district court "must resolve any uncertainties as to current state of controlling law in favor of plaintiffs." *Id.* "A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 233 (4th Cir. 1993). The removing defendant must prove "there is ***no possibility*** the plaintiff would be able to establish a cause of action." *Mayes*, 198 F.3d at 464 (emphasis added). Stated alternatively, the plaintiff need only demonstrate a "glimmer of hope" to relief in order to have the case remanded. *Hartley*, 187 F.3d at 426.

## ARGUMENT

### I. REMOVING DEFENDANTS' ARGUMENTS FOR REMOVAL HAVE BEEN ROUNDLY REJECTED BY COURTS SPECIFICALLY IN THE OPIOID CONTEXT.

This Court need look no further than the many decisions of its sister federal district courts born out of the opioid epidemic to find the legal roadmap that reveals the multiple fallacies in Removing Defendant's removal arguments. *Mayor & City Council of Baltimore*, No. 1:18cv800, 2018 WL 1963816 (D.Md. Apr. 25, 2018) (Russell, J.); *Anne Arundel County v. Purdue Pharma*, No. 1:18cv519, 2018 WL 1963789 (D.Md. Apr. 25, 2018) (Russell, J.); *County of Greenville v. Rite Aid of S.C., Inc.*, No. 6:18cv1085, 2018 U.S. Dist. Lexis 187478 (D.S.C. May 21, 2018) (Cain, J.); *County of Spartanburg v. Rite Aid of S.C., Inc.*, No. 7:18cv1799, 2018 U.S. Dist. Lexis 185367 (D.S.C. July 25, 2018) (Hendricks, J.); *County of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18cv1947, ECF No. 44 (D.S.C. Aug. 20, 2018) (Hendricks, J.); *County of Lexington v. Rite Aid of S.C., Inc.*, No. 3:18cv2357, ECF No. 32 (D.S.C. Oct. 9, 2018) (Hendricks, J.); *West Virginia v. McKesson Corp.*, No. 16-1772, 2018 WL 357307 (S.D. W.Va. Jan. 24, 2017) (Copenhaver, J.);

*West Virginia v. McKesson Corp.* , No. 2:17cv3555, ECF No.21  (S.D. W.Va. Feb. 15, 2018) (Faber, J.); *Brooke County Comm'n v. Purdue Pharma*, No. 5:18cv9, 2018 U.S. Dist. Lexis 72360 (N.D. W.Va. Feb. 23, 2018) (Bailey, J.); *City of Worcester v. Purdue Pharma***,** No. 4:18cv11958, 2018 U.S. Dist. Lexis 215824 (D.Mass. Nov. 21, 2018) (Hillman, J.); *New Hampshire v. Purdue Pharma*, No. 1:17cv427, 2018 WL 333824 (D.N.H. Jan. 9, 2018) (Barbadoro, J.); *Delaware v. Purdue Pharma*, No. 1:18cv383, 2018 WL 1942363 (D. Del. Apr. 25, 2018 (Andrews, J.); *New Mexico v. Purdue Pharma*, 323 F. Supp. 3d 1242 (D.N.M. 2018) (Herrera, J.); *Oklahoma v. Purdue Pharma*, No. 5:18cv574 , ECF No. 53 (W.D. Okla. Aug. 3, 2018) (LaGrange, J.); *Uintah County v. Purdue Pharma*, No. 2:18cv585, 2018 WL 3747847 (D. Utah Aug. 7, 2018) (Shelby, J.); *Weber County v. Purdue Pharma*, No. 1:18cv89, 2018 WL 3747846 (D. Utah Aug. 7, 2018) (Shelby, J.); *County of Dallas v. Purdue Pharma*, No. 3:18cv426, 2018 U.S. Dist. Lexis 73931 (N.D. Tex. Mar. 7, 2018) (Lynne, J.); *County of Delta v. Purdue Pharma*, No. 4:18cv95, 2018 WL 1440485 (E.D. Tex. Mar. 22, 2018) (Mazzant, J.); *County of Falls v. Purdue Pharma*, No. 6:18cv47, 2018 WL 1518849 (W.D. Tex. Mar. 28, 2018) (Pittman, J.); *County of Travis v. Purdue Pharma*, No. 1:18cv254, 2018 WL 1518848 (W.D. Tex. Mar. 28, 2018) (Pitman, J.); *County of Van Zandt v. Amerisourcebergen Corp.***,** No. 6:18cv64, ECF No. 73 (E.D. Tex. Apr. 6, 2018) (Schroeder, J.); *City of Reno v. Purdue Pharma*, No. 3:18cv454, 2018 WL 5730158 (D. Nev. Nov. 2, 2018) (Du, J.); *Staubus v. Purdue Pharma*, 2:17-cv-122-TAV-CLC, 2017 WL 476688 (E.D.Tenn. 10/20/17) (Varlan, J.), <u>see also</u> *Montana v. Purdue Pharma (In Re: Nat'l Prescription Opiate Litig.)*, MDL No. 1-MD-2804, 2018 U.S. Dist. LEXIS 143589 (N.D. Oh. Aug. 23, 2018) (Polster, J.).

Time and time again over the last year, district courts have rejected arguments similar or identical to those raised here by Removing Defendant. Indeed, other federal district courts within the Fourth Circuit have led the way in granting local government motions to remand in these cases.

In *County of Anderson v. Rite Aid of S.C., Inc.*, No. 8:18cv1947, ECF No. 44 (D.S.C. Aug. 20, 2018), Judge Hendricks rejected the same theories advanced by the Removing Defendants (as well as the Optum defendants' supplemental theory grounded in federal question jurisdiction), concluding that in light of the nature of the prescription drug supply system in the United States, there was no fraudulent joinder or basis for severance with regard to any particular defendant or group of defendants. In reaching this holding, Judge Hendricks cogently explained as follows:

> As described in the filings in this case and in the cited authority from decisions from courts around the country handling similar litigation, the prescription drug supply system in the United States involves manufacturers, wholesale distributors, large chain pharmacies, community pharmacies, hospitals and other medical facilities, and licensed prescribers, all of whom are involved, at one stage or another and in one capacity or another, of delivering prescription drugs to patients, who are the consumers. This delivery of prescription drugs takes place within a complex system that controls the price and flow of drugs in America. It is supposed to be a closed system in the sense that, according to laws and regulations cited in the Complaint, safeguards should be in place along the distribution chain to prevent prescription drugs from being diverted anywhere other than legitimate medical, scientific, and industrial channels. All of the Defendants are involved in the supply chain that delivers prescription drugs, including opioids, to patients. Based on the foregoing, the Court finds the Removing Defendants have failed to make a showing that the Employee Defendants were fraudulently joined.

*Cty. of Anderson* at pp. 12-13 (footnote omitted). Similarly, in denying Rule 21 severance, Judge Hendricks reasoned as follows:

> As stated above in regard to the doctrines of fraudulent joinder and fraudulent misjoinder, the facts alleged in the Complaint are sufficiently intertwined with respect to all of the Defendants. The claims are not so separate and distinct that keeping them joined would result in an injustice. On the contrary, keeping the parties and claims joined will promote efficiency and minimize delay, inconvenience, and expense to the parties. If the Court were to order severance to obtain federal jurisdiction, Anderson County stands to suffer significant prejudice as the Defendants in each case would have the ability to shift blame and responsibility to an absent party. This is sometimes referred to as the "empty chair" defense. For

> example, the Manufacturer Defendants would be able to shift blame
> to the absent Distributor, Dealer, or Employee Defendants, thereby
> forcing Anderson County to defend the actions of the absent
> Defendants in order to substantiate its claims against the Defendants
> present in each case.

*Id*. at pp. 15-16.

That decision in *County of Anderson v. Rite Aid of S.C., Inc.* represents one of a series of

cases out of the South Carolina federal district court. *See also Cty. of Greenville v. Rite Aid of S.C.,*

*Inc.*, 2018 U.S. Dist. Lexis 187478 (Cain, J.); *Cty. of Spartanburg v. Rite Aid of S.C., Inc.*,  2018

U.S. Dist. Lexis 185367 (Hendricks, J.); *Cty. of Lexington v. Rite Aid of S.C., Inc.*, No. 3:18cv2357,

ECF No. 32 (D.S.C. Oct. 9, 2018) (Hendricks, J.).

Likewise, in *Mayor & City Council of Baltimore*, 2018 WL 1963816, and *Anne Arundel*

*County v. Purdue Pharma*, 2018 WL 1963789, Judge Russell refused to sever claims against non-

diverse defendants following a rationale of equal applicability to this case. "[F]acts regarding the

role of the [non-diverse] Defendants in the Manufacturer Defendants' alleged scheme help

establish the City's claims against the Manufacturer Defendants. Put simply, the City's claims

against the [non-diverse] Defendants do not 'involve legal standards and factual inquiries distinctly

different' from its claim against the Manufacturer Defendants." *City Council of Baltimore*, 2018

WL 1963816, at *5 (citation omitted).

Lastly, in *Brooke County Commission v. Purdue Pharma*, 2018 U.S. Dist. Lexis 72360,

Judge Bailey granted a motion for remand in the face of allegations of fraudulent joinder. In a

description that applies equally here, Judge Bailey found as follows:

> . . . this case involves common legal, factual, and evidentiary
> issues, including: defendants' knowledge of and conduct regarding
> the diversion, abuse and addiction of prescription opioids; the
> amount of opioid drugs marketed, sold and distributed in the
> counties; the relationship between the legitimate needs of the
> counties and the quantities of opioids marketed, sold and distributed
> in the counties; the relationship between the dramatic increase in the

number of opioids distributed in the counties and diversion, abuse and addiction; the role that security measures play in the prevention of diversion, abuse and addiction; and the damages incurred by each of the counties. Additionally, Distributor Defendants are authorized distributors for Purdue and are an essential part of Purdue's distribution chain. Thus, records and communications between Distributor Defendants and Purdue, including the Sales Reps, are relevant and material evidence, particularly to the extent they concern the massive increase in the amount of opioids marketed and flowing into the counties; what efforts were taken to prevent diversion of controlled substances; and knowledge of diversion, abuse and addiction within the counties.

*Id.* at *23-24.

This Court should join the many other federal district courts that have rejected the removal grounds proffered by Removing Defendant precisely in the opioid context. Once such grounds are rejected, this case should be promptly remanded to the state circuit court in which it was originally filed.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THERE IS NOT COMPLETE DIVERSITY

The Removing Defendants must admit that three of the defendants in the Plaintiff's Complaint (McKesson Medical-Surgical, Inc., General Injectables & Vaccines, Inc. and Insource, Inc. (collectively, "the Virginia Distributors")) are Virginia citizens for diversity purposes, which indisputably means there is not complete diversity. Removing Defendants, however, argue that the Virginia Distributors are fraudulently joined. The Court should reject this argument.

First, the other district court decisions in the opioid context discussed in Section I, above, provide sufficient grounds for this Court to reject Removing Defendants' arguments. In a number

of those cases, the district courts addressed and rejected fraudulent joinder arguments raised by opioid defendants.

Second, even absent those decisions, there is no fraudulent joinder here because Plaintiff has alleged facts sufficient to establish a "possibility of a right to relief" against the Virginia Distributors. *Marshall*, 6 F.3d at 233. Removing Defendants only offer *ipse dixit* to the contrary.

In order to establish that a non-diverse defendant has been fraudulently joined, the removing party must establish either: (1) "that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court;" or (2) "that there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). Here, Removing Defendants do not allege that Plaintiff's jurisdictional facts were fraudulently pled; thus, the only test at issue here is whether "there is no possibility" that Plaintiff could establish a cause of action against the in-state defendants. "The burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor." *Id.* at 232-33 (citing *Poulous v. Naas Foods. Inc.*, 959 F.3d 69, 73 (7th Cir. 1992)).

Plaintiff's Complaint specifically includes the Virginia Distributors in the Complaint's category of "Distributor Defendants." (Compl. ¶¶ 136-38, 149-152). As Distributor Defendants, the Virginia Distributors are alleged to have

- "purchased opioids from manufacturers . . . and sold them to pharmacies throughout Virginia," as well as "played an integral role in opioids being distributed across Virginia" (Compl. ¶ 163);

- Failed to "effectively monitor and report suspicious orders of prescription opioids and to implement measures to prevent the filling of invalid and medically unnecessary prescriptions [which] greatly contributed to the vast increase in opioid overuse and addiction" (Compl. ¶ 164);

- Directly caused a public-health and law-enforcement crisis" (Compl. ¶ 164);

- Shared the "same legal duties to prevent diversion, and to monitor, report, and prevent suspicious orders of prescription[] opioids that were incumbent upon the Manufacturer Defendants … under Virginia and federal law" (Compl. ¶ 309);

- Been required to "maintain effective controls against opioid diversion," required "to create and use a system to identify and report to law enforcement downstream suspicious orders," "track their shipments," "exercise due care in confirming the legitimacy of each and every order prior to filling," and to have acknowledged these duties to the public and assured the public that they are "undertaking a duty to curb the opioid epidemic" (Compl. ¶¶ 310-317);

- Despite the existence of all these duties and standards, the Distributor Defendants, including the Virginia Distributors, are alleged in the Complaint to have "knowingly or negligently allowed diversion," (Compl. ¶ 320) and "negligently or intentionally failed to adequately control their supply lines to prevent diversion" (Compl. ¶ 326).

In addition to all of these allegations, the Complaint further alleges facts establishing the liability of the Distributor Defendants, including the Virginia Distributors. The Complaint goes on to assert eight (8) separate causes of action against the Virginia Distributors, including statutory and common law public nuisance (Counts I and II), common law civil conspiracy (Count V),

negligence per se (Count VII), negligence (Count VIII), gross and willful and wanton negligence (Counts IX and X), and unjust enrichment (Count XI).

Removing Defendants claim that the allegations of the Complaint against the Distributor Defendants do not actually apply to the Virginia Distributors. There is no basis in the Complaint for this conclusion. While at certain times more specific allegations are made against some of the Distributor Defendants – for example, Paragraph 320 lists a number of civil fines and penalties imposed on specific Defendants – there is nothing in the Complaint to suggest that the Virginia Distributors are not or should not be included in the allegations against the Distributor Defendants.[5]

As discussed above, Plaintiff need only demonstrate a "glimmer of hope" to relief in order to have the case remanded. *Hartley*, 187 F.3d at 426. It is clear that the facts contained in the

---

[5]In fact, the Complaint contains at least thirty-five (35) separate allegations that describe actionable conduct of Distributor Defendants. Notwithstanding the detail of the Complaint, Defendants disingenuously assign the name "Nominal Distributor Defendants" to the Virginia Distributors and then make the bald and unsupported assertion that allegations against the Distributor Defendants "are not properly attributable to the Nominal Distributor Defendants," vaguely suggesting (but not actually arguing) that the Complaint somehow fails the specificity requirements of notice pleading, or that there is a requirement to plead liability against these non-diverse defendants with something approaching the particularity required of, for example, allegations of fraud. The cases cited by Defendants do not support their implications. *See* footnote 6, *infra* (distinguishing Defendants' citations).

For example, in *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 220 F. Supp. 2d 414, 423–24 (E.D. Pa. 2002), the Court found fraudulent joinder for several reasons, including that the complaint was devoid of specific allegations against pharmacy defendants (individually or as a group). The Court noted that the complaint was filled "with general statements levied against all defendants, which most properly can be read as stating claims against the drug manufacturers." *Id*. The Court also noted that it made its ruling in light of how the diet drug litigation unfolded: "[T]here is a pattern of pharmacies being named in complaints, but never pursued to judgment, . . . typically being voluntarily dismissed at some point after the defendants' ability to remove the case has expired." *Id*. Neither circumstance is applicable here. The Complaint contains numerous and specific allegations against all of the Distributor Defendants, and Defendants can point to no history or pattern in state court opioid litigation where Distributors are named as defendants and then later dismissed voluntarily.

Complaint are more than sufficient to state a colorable claim under Virginia law against McKesson Medical, General Injectables & Vaccines, Inc. and Insource, Inc.. *See, e.g.*, *Cordill v. Purdue Pharma, L.P.*, No. 1:02CV00121, 2002 U.S. Dist. LEXIS 21476, at *8 (W.D. Va. Nov. 5, 2002) (granting a motion to remand and noting that under Virginia law, "the use of the word 'negligence' in a motion for judgment will generally suffice to state a valid cause of action against a defendant").[6]

---

[6] The cases cited by Removing Defendants in Paragraphs 71-72 and footnote 4 of the Notice are virtually all distinguishable on the simple basis that, in this case, unlike the cases referenced, Plaintiff has unquestionably alleged a viable claim against the Virginia Distributors and has numerous specific allegations directed at them. *See City of Brownsville v. Sw. Bell Tel. Co.*, No. CIV. A. B-90-200, 1991 WL 107403, at *3 (S.D. Tex. June 6, 1991) (finding fraudulent joinder only because "Plaintiffs' Complaint contain[ed] no allegation of wrongdoing by Maples, nor is there a prayer for relief against him"); *Lewis v. PNC Bank, N.A.*, No. 2:13-CV-69-RWS, 2013 WL 6817090, at *2 (N.D. Ga. Dec. 26, 2013) (noting that "[i]f there is any possibility that the state law might impose liability on a resident defendant . . . the federal court cannot find that joinder of the resident defendant was fraudulent" but finding that "plaintiff does not allege how Rubin Lublin specifically committed any wrongdoing against him"); *Jones v. Mortg. Elec. Registration Sys., Inc.*, No. 4:12-CV-00035-HLM, 2012 WL 13028595, at *5 (N.D. Ga. Mar. 12, 2012) (finding that "Plaintiffs [did] not allege any wrongdoing by [parent corporation] Defendant Synovus Financial, and Plaintiffs [did] not allege facts sufficient to pierce the corporate veil"); *Galler v. 21st Mortg. Corp.*, No. 3:14CV174-MCR/EMT, 2014 WL 12701066, at *2 (N.D. Fla. Sept. 3, 2014) (concluding that the "complaint include[d] no allegations of fact at all regarding Yes Housing"); *Baker v. Select Portfolio Servicing, Inc.*, No. 1:12-CV-03493-JEC, 2013 WL 4806907, at *6 (N.D. Ga. Sept. 9, 2013) (finding fraudulent joinder where plaintiff had "[not] disputed" the allegation of fraudulent joinder and where "plaintiff ha[d] not provided any specific factual basis for the claims against the defendants and [did] not mention the defendants individually in the complaint"); *Cammack New Liberty, LLC v. Vizterra, LLC*, CA No. 3:09-15-DCR, 2009 WL 2043568 (E.D. Ky. Jul. 13, 2009) (observing both that plaintiffs "make no allegations of wrongdoing or any other basis for obtaining relief from [the non-diverse defendant]" and that in the case management plan submitted to the court the parties agreed that the plaintiffs "had agreed to voluntarily dismiss [the non-diverse defendant] before removal occurred"); *First Merchs. Tr. Co. v. Wal-Mart Stores E., LP*, 630 F. Supp. 2d 964, 968 (S.D. Ind. 2008) (noting that "Plaintiffs make no allegations of wrongdoing or of any other basis for obtaining relief" from the non-diverse defendant); *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 549 (E.D. Ky. 2001) (finding fraudulent joinder only because "plaintiffs' complaint [did] not link plaintiffs' alleged injuries with the action (or inaction) of defendant pharmacies"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 220 F. Supp. 2d 414, 423–24 (E.D. Pa. 2002) (finding that "the complaints . . . [were] devoid of specific allegations against the pharmacies"). The only two cases to rest their decision on different grounds were *McGoey v. State Farm Ins. Co.*, CA No. 06-

14

Taking the allegations in the light most favorable to Plaintiff, as this Court must, Removing Defendants have failed to meet their heavy burden of establishing by clear and convincing evidence that Plaintiff has failed to state a cause of action against the Virginia Distributors. Thus, because it simply "cannot be said that no reasonable basis exists for holding [the Virginia Distributors] liable" under Virginia law, Plaintiff's Motion to Remand must be granted. *Myers v. Air Serv. Corp.*, 1:07cv911, 2008 U.S. Dist. LEXIS 1836, *3 (E.D. Va. Jan. 9, 2008).[7]

## III.   RULE 21 DOES NOT PROVIDE A BASIS FOR SEVERANCE AND CANNOT BE USED TO MANUFACTURE JURISDICTION

Plaintiff's Complaint alleges Defendants engaged in a systematic, sophisticated and integrated plan to produce, market and distribute opioids in such a manner as to flood the local community with dangerous and highly addictive drugs without regard for legal safeguards or concern for the basic safety and well-being of their customers and the community at large.

---

8954, 2007 WL 1166352 (E.D. La. Apr. 17, 2007), and *Howard v. CitiFinancial, Inc.*, 195 F. Supp. 2d 811 (S.D. Miss. 2002). These decisions involved non-diverse insurance agent individual defendants. Each of these courts concluded that the agents owed no duties to the plaintiffs – since, as a matter of law, plaintiff could not bring claims against the non-diverse agents, the courts concluded that the agents were fraudulently joined. None of these decisions is applicable here.

[7] A doctrine related to fraudulent joinder is the contention that a defendant is merely a "nominal" party. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980) (holding that "nominal" or "formal" parties that have been joined are to be disregarded and only "real parties to the controversy" are considered relevant). A "nominal party" is one that is "part of a suit only as the holder of assets that must be recorded in order to afford complete relief; no cause of action is asserted against a nominal defendant." *Commodity Future Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002). Removing Defendants do not formally argue this point separately from its general contention that the Virginia Distributors are fraudulently joined, but Removing Defendants do use the term "Nominal Distributor Defendants" throughout its Notice.

The Fourth Circuit has not provided a specific standard against which courts can determine what constitutes a "nominal party" for removal purposes, but district courts in Virginia and elsewhere have treated this inquiry as identical to that used for assessing fraudulent joinder. *See, e.g., Payne v. Bank of Am., N.A.*, No. 3:09-cv-80, 2010 U.S. Dist. LEXIS 12076 (W.D. Va. 2010). Thus, to the extent the "nominal party" doctrine is considered separately, for the same reasons the Virginia Distributors are not fraudulently joined, they are not nominal parties.

Nevertheless, the Removing Defendants request that this Court sever the Distributor Defendants from this case in order to manufacture federal diversity jurisdiction where it does not exist. They erroneously contend that the allegations against the Manufacturer Defendants and PBM Defendants are factually distinct from those against the Distributor Defendants. They contend that their goal is judicial efficiency and economy. However, their true goal is just the opposite – they want to break this case into as many components as possible in order to cause unnecessary delays, multiply the costs to the Plaintiff and gain unwarranted tactical advantage.

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 532 U.S. 83, 94 (1998). Thus, if a district court does not have removal jurisdiction over a removed case, it lacks the power to do anything—including severing the claims in the case—other than remand to the state court. *See Hughes v. Wells Fargo Bank, N.A.*, 617 F. App'x 261, 263 (4th Cir. 2015) ("If the district court determines at any time before final judgment that it lacks subject matter jurisdiction over a removed action, it must remand to state court."); *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 589 (4th Cir. 2006) ("[O]nce a district court has found that it lacks subject matter jurisdiction in a removed case, no other fact-finding, legal analysis, or exercise of judicial discretion is necessary in order to follow the congressional directive; the decision to remand a case to remedy a lack of subject matter jurisdiction is purely ministerial."). A district court only has removal jurisdiction over a case if it would have had original jurisdiction over the case had it been filed originally in federal court. 28 U.S.C. § 1441(a). *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 162 (1997).

Further, when removal is based on diversity of citizenship, diversity must exist at the time of removal. *See United Co. v. Keenan*, No. CIV A 1:06CV00071, 2006 WL 2994989, at *3 (W.D. Va. Oct. 20, 2006), *report and recommendation adopted,* No. 1:06CV00071, 2006 WL 3254513 (W.D. Va. Nov. 9, 2006) ("[F]or removal to be deemed valid, diversity of citizenship must exist at the time the notice of removal is filed."); *Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) ("The removal rule … requires that to support diversity jurisdiction in removed cases, diversity must have existed both at the time the action was originally commenced in state court and at the time of filing the petition for removal.").

"While Rule 21 is routinely employed in cases that *began* in federal court, the federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *In re Xarelto (Rivaroxaban) Prod. Liab. Litig.*, No. 16-1066, 2016 WL 4409555, at *7 (E.D. La. Aug. 19, 2016) (emphasis added). Indeed, the Supreme Court has stated that Rule 21 should only be used sparingly, and the court should "carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 838 (1989) (a case where *the plaintiff* originally filed suit in federal court and asked the appellate court to dismiss the non-diverse defendant to salvage jurisdiction). Moreover, Rule 21 severance of claims is also limited by Federal Rule of Civil Procedure 82 which states: "These rules do not extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82; *Echols v. Omni Med. Group, Inc.*, 751 F. Supp. 2d 121, 1215 (N.D. Ok. 2010).

In attempting to support severance, the Removing Defendants do not cite to any cases decided in the context of the ongoing opioid litigation where a court has severed claims against Manufacturer Defendants from claims against Distributor Defendants in order to create federal

diversity jurisdiction. Instead, they point to inapposite holdings addressing the combination of medical malpractice claims against non-diverse healthcare providers (such as doctors, nurses and hospitals) and products liability claims against drug or medical device manufacturers.

For example, the Removing Defendants rely on the decision in *Cooke-Bates v. Bayer Corp.*, No. 3:10-cv-261, 2010 WL 3984830 (E.D. Va. Oct. 8, 2010), as support for the request that the claims against Distributor Defendants be severed. But the circumstances of that case are not comparable to the allegations in this Complaint. In *Cooke-Bates*, plaintiff brought a products liability case against "Bayer Defendants" for manufacturing and distributing "Yaz," a birth control drug, together with a claim of malpractice against a non-diverse defendant doctor. The Bayer Defendants removed the case to federal court (and intended to designate the case as a "tag-along" to an MDL case involving the birth control drug). Plaintiff sought remand, which was originally granted on the ground that the doctor did not agree to removal. Upon reconsideration, the Court abrogated its remand order as to the Bayer Defendants and concluded that the doctor's presence was not essential under Rule 19 explaining:

> [Plaintiff] alleges Bayer is liable for defective design, manufacture, and advertisement of Yaz. Against Dr. Brooks, [plaintiff] alleges seven acts and omissions actionable as negligence. The resolution of some of these – such as, for example, the allegation that Dr. Brooks failed to follow-up on the decedent's complaints of leg pain that occurred after she began taking Yaz – likely do not relate to a court's determination of Bayer's liability." *Id.*

Removing Defendants also cite to *Sullivan v. Calvert Memorial Hospital*, 117 F. Supp. 3d 702 (D. Md. 2015), as support for severance of the claims against Distributor Defendants. In *Sullivan*, plaintiff brought claims against:  1)  Non-diverse healthcare providers (surgeon, nurse, hospital) for negligence in failure to remove a catheter during surgery and failure to properly remove the catheter when it was later discovered in the patient after surgery;  and 2) Medical device manufacturers for failure to warn of the dangers of medical device (TVT sling) implanted

in the patient during surgery.  As in *Cooke-Bates*, the Court found the medical malpractice claims

against healthcare providers to be  distinct and unrelated to product liability claims against drug or

medical device manufacturers:

> Counts I and II against the Maryland Healthcare Defendants relate to the negligence
> *vel non* with respect to leaving a portion of the catheter in Sullivan's bladder after
> her surgery. The counts against Ethicon Defendants relate only to the manufacture
> of the TVT sling. Sullivan has not plausibly alleged in her Complaint any way in
> which the Ethicon Defendants' TVT sling is casually connected to the injury caused
> by the catheter.

*Id*. at 705.[8]

As the Removing Defendants are no doubt aware, their reliance on *Sullivan* was flatly

rejected in two recent opinions by Judge Russell <u>in opioid lawsuits</u> originally filed in Maryland

---

[8] Defendants cite to several other inapposite cases in which severance was granted in cases where claims of medical malpractice against non-diverse healthcare providers were combined with product liability claims against drug or medical devices manufacturers. In those cases, the court found that the claims were legally and factually distinct. In *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868, 872-74 (N.D. Ohio 2009), the Court severed claims against non-diverse doctors/nurses/hospital who administered the drug Heparin to a decedent patient ("despite her chart noting her allergy to Heparin") from plaintiff's product liability claims against the manufacturer of Heparin. The Court explained that "such medical malpractice allegations differ from [plaintiff's] products liability claim which focuses on Baxter's conduct in designing, manufacturing, labeling and recalling tainted Heparin." *Id*. at 872. In *Mayfield v. London Women's Care, PLLC,* No. 15-19-DLB, 2015 WL 3440492 (E.D. Ky. May 28, 2015), the court found that the "medical malpractice claim against Healthcare Defendants is highly distinct from the various claims brought against Ethicon for products liability. Not only is it comprised of unique legal elements, it is based on completely different factual allegations  . . . Just as no one from Ethicon was involved with Mayfield's surgery, Dr. Mechas had nothing to do with the design, manufacture or sale of a single pelvic mesh implant." *Id*. at *4. *See also DeGidio v. Centocor, Inc.*, No. 3:09CV721, 2009 WL 1867676, at *3-4 (N.D. Ohio July 8, 2009) (claims against non-diverse doctor involving his diagnosis and treatment of plaintiff were legally and factually distinct from products liability claim against drug company defendants). Defendants' citation to *McElroy v. Hamilton County Board of Education*, No. 1:12-cv-297, 2012 WL 12871469, at *2-3 (E.D. Tenn. Dec. 20, 2012), is even more puzzling. In *McElroy*, all the parties and the Court <u>agreed </u>that plaintiffs' breach of contract claims relating to insurance coverage (which named plaintiffs' non-diverse employer, Hamilton Country Board of Education, as a co-defendant along with insurance companies), should be severed from plaintiffs' products liability claims against defendant drug companies. Unlike the present case, all the cases cited by Defendants involve the combination of two sets of claims that are completely distinct both legally and factually.

state courts (and removed to federal court) in which several of the current defendants[9] were parties.

In *Mayor & City Council of Baltimore*, 2018 WL 1963816, and *Anne Arundel County v. Purdue Pharma*, 2018 WL 1963789, Judge Russell refused to sever claims against non-diverse healthcare providers (the "Rosen-Hoffberg Defendants"), following a rationale of equal applicability to this case.

> According to Judge Russell:
>
> Because the City's claims against Rosen-Hoffberg Defendants are factually and legally intertwined with its claims against the Manufacturer and Distributor Defendants, the Court concludes that the Rosen-Hoffberg Defendants are necessary and indispensable under Rule 19. Thus, the Rosen-Hoffberg Defendants are not severable under Rule 21. The Court, therefore, will not sever the Rosen-Hoffberg Defendants to create complete diversity among the parties.

*City of Baltimore*, 2018 WL 1963816, at *5. Judge Russell contrasted the separate and independent medical malpractice and product liability claims in *Sullivan* with the claims in *City of Baltimore* and *Anne Arundel County*:

> Here, by contrast, the City's claims against the Rosen-Hoffberg Defendants are factually and legally intertwined with its claims against the Manufacturer Defendants. First, the City brings public nuisance and negligence claims against all Defendants, alleging that all Defendants contributed to the opioid crisis in Baltimore. Additionally, the City alleges that the Manufacturer Defendants violated the Maryland False Claims Act by making false and misleading statements about the nature of opioids, thereby causing the Rosen-Hoffberg Defendants to supply City employees with massive quantities of prescription opioids… The City also alleges that the Rosen-Hoffberg Defendants repeated and disseminated the Manufacturer Defendants' false messages about opioids and received payment directly from the Manufacturer Defendants. Finally, the City alleges that the Manufacturer and Distributor Defendants "turned a blind eye" to the Rosen-Hoffberg Defendants' over-prescription of opioids. As a result, facts regarding the role of the Rosen-Hoffberg Defendants in the Manufacturer Defendants' alleged scheme help establish the City's claims against the Manufacturer Defendants. Put simply, the City's claims against the Rosen-Hoffberg Defendants do not "involve

---

[9] Among the defendants who were also parties to the Maryland cases are:  Purdue Pharma, L.P., Purdue Pharma, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Janssen Pharmaceutica, Inc., Watson Laboratories, Inc., Activis, LLC, Activas Pharma, Inc., Endo Health Solutions, Inc., Endo Pharmaceuticals, Inc., McKesson Corporation, Cardinal Health, Inc., and AmericsourceBergen Drug Corporation.

legal standards and factual inquiries distinctly different" from its claims against the Manufacturer Defendants. *Sullivan*, 117 F. Supp. 3d at 706.

*Id.* at *5.

As in *City of Baltimore* (and unlike *Sullivan*), in the present case, there is a commonality of legal and factual issues concerning the claims against the Manufacturer Defendants and the Distributor Defendants that predominate. As alleged in the Complaint and as noted above, Distributor Defendants were essential participants in Defendants' concerted efforts to flood the community with dangerous and addictive opioids. Manufacturer and Distributor Defendants worked closely together in a sophisticated and integrated scheme to produce and deliver prescription opioids in violation of their **shared** legal obligations to monitor and report suspicious transactions and volumes. Moreover, Distributor and Manufacturer Defendants shared the same financial incentives to continue pumping unsafe and massive quantities of opioids into the local community. *See* Compl. at ¶¶ 3-5, 15, 136-37, 149-50, 285-293, 309-333, Section V (Causes of Action).

For example, the Complaint alleges:

In addition to their common law duties, Manufacturer and Distributor Defendants are subject to statutory and regulatory requirements under Virginia law. Virginia imposes numerous substantive requirements on parties involved in the distribution chain of opioids and other controlled substances. These requirements include providing adequate inventory control and security of opioids to prevent diversion, and reporting suspicious orders of opioids to the Virginia Board of Pharmacy. …

Compl. at ¶ 285.

On information and belief, Defendants knowingly, recklessly, and/or negligently supplied suspicious quantities of prescription opioids to obviously suspicious physicians and pharmacies in and around [the local community], without disclosing suspicious orders as required by regulations and otherwise circumventing their statutory obligations under Virginia and Federal law.

Compl. at ¶ 291

> The Defendants could have (and should have) reported and stopped the flow of prescription opioids into the black market. But they intentionally, recklessly, and/or negligently failed to investigate, report, and halt suspicious orders. Accordingly, as a direct result of the Defendants' misconduct, substantial and dangerous quantities of prescription opioids were illegally diverted to and overprescribed in [the local community].

Compl. at ¶ 293.

In contrast to the cases cited by the Removing Defendants, it is clear that the legal and factual issues common to the claims against all categories of Defendants in this case are inseparable. In fact, as noted above, courts addressing identical requests for severance from Defendants in similar opioid cases have uniformly rejected the same arguments for misjoinder and severance made by Defendants. In *Brooke County Commission v. Purdue Pharma*, 2018 U.S. Dist. Lexis 72360, Judge Bailey granted a motion for remand in the face of allegations of fraudulent joinder and request for severance. His description of the inseparable legal and factual issues applicable to the claims against all Defendants bears repeating because it is precisely what Plaintiff has alleged in this case:

> . . . this case involves common legal, factual, and evidentiary issues, including: defendants' knowledge of and conduct regarding the diversion, abuse and addiction of prescription opioids; the amount of opioid drugs marketed, sold and distributed in the counties; the relationship between the legitimate needs of the counties and the quantities of opioids marked, sold and distributed in the counties; the relationship between the dramatic increase in the number of opioids distributed in the counties and diversion, abuse and addiction; the role that security measures play in the prevention of diversion, abuse and addiction; and the damages incurred by each of the counties. Additionally, Distributor Defendants are authorized distributors for Purdue and are an essential part of Purdue's distribution chain. Thus, records and communications between Distributor Defendants and Purdue, including the Sales Reps, are relevant and material evidence, particularly to the extent they concern the massive increase in the amount of opioids marketed and flowing into the counties; what efforts were taken to prevent diversion of controlled substances; and knowledge of diversion, abuse and addiction within the counties.

*Id.* at *23-24.

The legal and factual allegations against the Manufacturer Defendants and Distributor Defendants here include their cooperation, coordination and collusion to accomplish their common goal of profiting from unrestrained pumping of prescription opioids into the local community in violation of shared legal duties. Defendants have cited no case where a court has granted severance when faced with similar allegations. Plaintiff has cited a long line of cases where courts have rejected the exact same arguments made by Defendants for severance – all in the context of opioid litigation. Severing these claims would allow needless delay, reward Defendants' gamesmanship, unnecessarily multiply the cost to the Plaintiff of litigating the overlapping and intertwined claims in separate venues, and permit Defendants to use the "empty chair" defense to shift responsibility to severed Defendants. The Court should deny the request under Rule 21 to sever Plaintiff's claims against the Distributor Defendants and should remand the entire case back to Circuit Court.

## IV.   THE CLAIMS AGAINST THE DISTRIBUTOR DEFENDANTS ARE NOT FRAUDULENTLY MISJOINED

In their last strained attempt to support removal, the Removing Defendants argue that the citizenship of all the Distributor Defendants (including the Virginia Distributors) should be ignored because of the doctrine of fraudulent misjoinder (Supp. Notice, pp. 21-22). Fraudulent misjoinder is "an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." *Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492, 496 (S.D. W. Va. 2009). Thus, the issue is whether claims against the diverse and non-diverse defendants are sufficiently related to be properly joined in a single case. And the doctrine would, according to Removing Defendants, permit removal by Manufacturer Defendants.

The problem for Removing Defendants is that, first, the doctrine of fraudulent *mis*joinder has never been adopted by the Fourth Circuit, and in fact this Court has itself declined to adopt it. *See Tinsley v. Streich*, 143 F. Supp. 3d 450, 458 (W.D. Va. 2015) ("The Fourth Circuit has not expressly adopted the fraudulent misjoinder doctrine and district courts within the circuit have disagreed as to whether to adopt it… Even if the court were to adopt the doctrine as an exception to the complete diversity rule, <u>which it declines to do</u>, the court finds no misjoinder under either the federal or the state rule.") (emphasis added).

Second, Removing Defendants' argument for misjoinder has been directly addressed and roundly rejected in the opioid context. *Brooke County Comm'n v. Purdue Pharma*, No. 5:18cv9, 2018 U.S. Dist. Lexis 72360 (N.D. W.Va. Feb. 23, 2018) (Bailey, J.);  *County of Dallas v. Purdue Pharma*, No. 3:18cv426, 2018 U.S. Dist. Lexis 73931 at *8 (N.D. Tex. Mar. 7, 2018) (Lynne, J.) ("Plaintiff alleges that the Distributor Defendants profited from distributing the fraudulently marketed opioids, knowingly failed to report or stop the increase in opioid distribution and sale, and engaged in a scheme with the Manufacturing and Dealer Defendants to fuel the sale of opioids. … Thus, there is no fraudulent misjoinder under *Tapscott*, …"); *County of Falls v. Purdue Pharma*, No. 6:18cv47, 2018 WL 1518849 at *4 (W.D. Tex. Mar. 28, 2018) (Pitman, J.) ("Falls County has asserted five causes of action against both the Manufacturer and Distributor Defendants … [T]he claims against each set of defendants are hardly wholly distinct or lacking any real connection; on the contrary, they raise a host of common factual and legal issues.").

Nonetheless, even if this theory of removal is considered, it is clear that no fraudulent misjoinder has occurred in this case. Under both the Virginia rules and the federal rules for permissive joinder of parties, a plaintiff may join several defendants in one action if any right of relief the plaintiff asserts against the defendants, in the alternative, arises out of the same

transaction or occurrence. *See Wright v. Lilly*, 66 Va. Cir. 195, at \*5 (2004) (noting that the Virginia and federal rules for permissive joinder are "virtually identical, though the Virginia statute and rule omit any reference to 'series of transactions or occurrences'"); Fed. R. Civ. P. 20(a)(2)(A) ("Persons . . . may be joined in one action as defendants if . . . any right to relief is asserted against them . . . in the alternative with respect to or arising out of the same transaction [or] occurrence[.]"); Va. Code Ann. § 8.01-281("A party asserting . . . a claim . . . may plead alternative facts and theories of recovery against alternative parties, provided that such claims . . . or demands for relief so joined arise out of the same transaction or occurrence.").

The Supreme Court of the United States has said that Rule 20(a) must be interpreted to allow for the "***broadest possible scope of action*** consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). Therefore, "the rule should be construed in light of its purpose, 'which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir.1983). Moreover, the requirements of Rule 20 are to be "***liberally construed***." *Potomac Valley Hospital of W. Va., Inc. v. Streuver Bros.*, Civil Action No. 3:09—CV-72, 2010 WL 11526861 (N.D. W.Va. March 29, 2010) (emphasis added). And, in the context of the fraudulent misjoinder doctrine, it has been recognized that the removing party must show "that there is **no possibility**" of proper joinder. *In Re: Lipitor (Avorvastatin Calcium) Marketing, Sales Practices & Prod. Liab. Litig.*, MDL No. 2:14-mn-02502, 2016 WL 7339811 (D.S.C. Oct. 24, 2016) (Gergel, J.) at \*6 (emphasis in original).

In determining whether a right to relief arises from the same transaction or occurrence, the focus is on the relationship between events giving rise to the action. *See Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) ("Transaction is a word of flexible meaning. It may comprehend

many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."). Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *J.C. ex rel. Cook v. Pfizer, Inc.*, No. 3:12-CV-04103, 2012 WL 4442518, at *5 (S.D.W. Va. Sept. 25, 2012). Further, absolute identity of all events giving rise to the claims is unnecessary. *Saval*, 710 F.2d at 1031.

Plaintiff's claims in this case against the Manufacturer Defendants, the Distributor Defendants, and the PBMs all arise out of the same series of transactions or occurrences and are otherwise logically related, as they all involve the improper marketing, distribution and widespread diversion of opioids.

Additionally, Plaintiff's injuries here are indivisible. Thus, the injuries and damages sustained by Plaintiff relating to Defendants' conduct are "inextricably intertwined" and, therefore, arise from the same series of transactions or occurrences such that joinder of the claims is proper. *Bell v. Werner Enterprises, Inc.*, No. 5:11CV18, 2011 WL 1297115, at *3 (N.D.W. Va. Apr. 5, 2011) (finding claims against separate defendants involving two separate car accidents — the second accident aggravating injuries from the first accident — were properly joined in that the injuries the plaintiff received from the two accidents were inextricably intertwined and accordingly arose from the same series of transactions or occurrences).

The subject claims also involve common questions of fact and law about, *inter alia*, the Manufacturer Defendants, the Distributor Defendants and the PBMs' knowledge of and conduct regarding the dangerous expansion of the market for opioids, the diversion of opioids, and the excessive distribution of opioids. Plaintiff asserts common claims against these Defendants relating to public nuisance, negligence, fraud and unjust enrichment. There are also common

questions relating to damages, such as the amount of Plaintiff's damages and who is responsible for paying these damages. Under these circumstances, the Removing Defendants cannot show that the Distributor Defendants have not been properly joined, much less that there is "no possibility" of proper joinder.

The Removing Defendants' reliance on *Cty. Comm'n of McDowell Cty v. McKesson Corp.*, 263 F. Supp 639 (S.D.W.Va. 2017), and the follow-on, duplicate case of *City of Huntington v. AmerisourceBergen Drug Corp.*, Civ.A.No. 3:17-01362, 2017 WL 3317300 (S.D.W.Va. August 3, 2017), does not help their cause.[10]  Those cases were markedly different from this case in that they did not involve alleged misjoinder of opioid Manufacturers or Distributors; indeed, Manufacturers were not even parties in those cases. The alleged misjoinder at issue there concerned medical malpractice claims against a medical doctor who had prescribed opioids. The Court noted that this was "the rare case that fits the 'no possibility of recovery' rubric." *McDowell* at 644. The Court explained that no possible malpractice claim could be made against the doctor because plaintiff failed to comply with West Virginia's Medical Professional Liability Act, which imposes a series of procedural and jurisdictional prerequisites for filing medical malpractice lawsuits. The Court also found the malpractice claim was fraudulently misjoined on the ground that the claim against the doctor arose out of different transactions, involved different evidence, and rested on different legal theories than the claims against the diverse defendants.

But the misjoined party was, again, a medical doctor accused of medical malpractice, not a Distributor – the Distributors are similarly situated with Manufacturers regarding their shared legal obligations to monitor, track and report suspicious orders of controlled substances. Thus, this

---

[10] The *Huntington* case was decided one month after *McDowell* by the same Judge. He found that the two cases were materially identical and ruled in *Huntington* by attaching and incorporating by reference his earlier Opinion in *McDowell*.

is a far different context, which is why in the face of *McDowell* and *Huntington*, the federal district

court in *Brooke County*, *supra*, reached a different conclusion. The *Brooke County* court rejected

a theory of fraudulent misjoinder in a case involving alleged misjoinder between Manufacturer

and Distributor claims. *Brooke County* is similar to, and, therefore, relevant to the case *sub judice.*

*McDowell* and *Huntington* are not.[11]

---

[11] Similarly, the cases the Removing Defendants cite to support their argument that the Distributor Defendants are misjoined under Rule 20 are easily distinguishable. For example, in *Loeffelbein v. Milberg*, the Kansas district court severed claims based on Rule 20 permissive joinder only because the claims against the defendants at issue "clearly ar[ose] from two different set of facts." *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP*, No. CIV.A. 02-2435-CM, 2003 WL 21313957, at *6 (D. Kan. May 23, 2003). Specifically, the *Loeffelbein* court noted that the "claims against the Rare Medium defendants . . . arise from allegations of securities fraud" while the "allegations against defendants Mitchell and Milberg . . . arise from the circumstances surrounding defendant Milberg's engagement to sue Rare Medium on plaintiffs' behalf." *Id.* Unlike the situation in *Loeggelbein*, the claims against the Defendants in this case clearly involve common questions of fact and all involve the improper marketing, distribution and diversion of opioids.

For the same reason, the additional cases they cite are also distinguishable. *See e.g., Todd v. Cary's Lake Homeowners Ass'n*, 315 F.R.D. 453, 457–59 (D.S.C. 2016) (finding improper joinder only because plaintiff did not assert a "right to relief 'jointly' or 'severally'" against the defendants at issue and because the claims arose from two different set of facts – one from "the construction and maintenance of dams" and the other from "an insurance policy" the plaintiff and defendant negotiated); *Westley v. Progressive Specialty Ins. Co.*, No. CIV.A. 14-1410, 2014 WL 4489620, at *3 (E.D. La. Sept. 10, 2014) (granting severance based on improper joinder only because the claims at issue involved "two distinct events"; specifically, "Plaintiff's claim against Malcolm rests entirely on his alleged negligence in failing to advise her of the F–250's deficient insurance coverage, whereas Plaintiff's claims against Bowie, Bowie Farms, and Progressive deal entirely with distinct causes of action, including Bowie's alleged negligence per se in failing to abide by state traffic regulations"); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (granting severance only because "Plaintiffs' claims based on strict products liability against the removing Defendants are separate from Plaintiffs' claims of medical malpractice against the California Defendants"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 683–84 (D. Nev. 2004) (granting severance where "only two of the plaintiffs . . . have claims against the non-diverse defendants" and because "claims of plaintiffs who have not purchased or received diet drugs from an identical source, such as a physician, hospital or diet center, do not satisfy the same transaction or occurrence requirement"); *Anderson v. State Farm Mut. Auto. Ins. Co.*, No. 4:08CV345-RH/WCS, 2008 WL 11366408, at *2–3 (N.D. Fla. Nov. 10, 2008) (severing claims where there was no "question of law or fact in common" and where claims against State Farm "turn[ed] on what it did after the wreck . . . in light of the policy" and the claims against the Reardon defendants "turn[ed] on what advice . . . should have [been] provided in advance" with respect to coverage); *DIRECTV, Inc. v.*

## VI.         THE COURT SHOULD AWARD COSTS AND FEES

"The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Therefore, if it appears that the federal court lacks jurisdiction and the case is remanded, the district court has broad discretion to award a plaintiff costs and fees under 28 U.S.C. § 1447(c). The Court may award fees where the removing party lacked an objectively reasonable basis for removal. *Id.* at 131. Given the lack of an objectively reasonable basis for the Removal Defendants' removal of this action, an award of attorney's fees is appropriate. *See Miller v. Baker*, No. 5:09CV00094, 2010 WL 3585423, at *2 (W.D. Va. Sept. 9, 2010) ("Given the lack of an objectively reasonable basis for removal, the court finds that the award of attorney's fees is warranted in this case.").

### <u>CONCLUSION</u>

For these reasons the Court should grant the Motion to Remand.

---

*Beecher*, 296 F. Supp. 2d 937, 945 (S.D. Ind. 2003) (granting severance where the claims did not "arise out of the same transaction, occurrence or series of occurrences" and, instead, plaintiff alleged only that "many individuals have wronged in the same way, but in separate transactions or occurrences"); *Randleel v. Pizza Hut of Am., Inc.*, 182 F.R.D. 542, 543–44 (N.D. Ill. 1998) (granting severance where the two set of plaintiffs' claims against Pizza Hut were "separate and distinct"; specifically, court explained that no "common discriminatory policy or practice" was alleged and, instead, the claims involved "factually discrete and unrelated incidents, which occurred two months apart at restaurants in different states, and which involved different management teams and workers").

Respectfully Submitted,                    **THE BOARD OF SUPERVISORS OF PRINCE WILLIAM COUNTY, VIRGINIA**

 **/s/** *Lauren Tallent Rogers*
**SANFORD HEISLER SHARP, LLP**
Grant Morris (VSB No. 16290)
gmorris@sanfordheisler.com
Kevin Sharp (*pro hac vice to be submitted*)
ksharp@sanfordheisler.com
Ross Brooks (*pro hac vice to be submitted*)
RBrooks@sanfordheisler.com
Saba Bireda (*pro hac vice to be submitted*)
sbireda@sanfordheisler.com
Andrew Miller (*pro hac vice to be submitted*)
amiller@sanfordheisler.com
611 Commerce Street, Suite 3100
Nashville, TN 37203
Tel: (615) 434-7000
Fax: (615) 434-7020

**THE CICALA LAW FIRM PLLC**
Joanne Cicala (*pro hac vice to be submitted*)
joanne@cicalapllc.com
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801

**KAUFMAN & CANOLES, P.C.**
W. Edgar Spivey (VSB No. 29125)
wespivey@kaufcan.com
Patrick H. O'Donnell (VSB No. 29637)
phodonnell@kaufcan.com
R. Johan Conrod, Jr. (VSB No. 46765)
rjconrod@kaufcan.com
Lauren Tallent Rogers (VSB No. 82711)
ltrogers@kaufcan.com
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Tel: (757) 624-3000
Fax: (888) 360-9092

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2019, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to filing users in this matter, including the following:

| | |
|---|---|
| **WILLIAMS MULLEN**<br>Turner A. Broughton (VSB No. 42627)<br>Brendan D. O'Toole (VSB No. 71329)<br>200 South 10th Street, Suite 1600<br>Richmond, VA 23219<br>Tel.:  (804) 420-6000<br>Fax:  (804) 644-0957<br>tbroughton@williamsmullen.com<br>botoole@williamsmullen.com<br><br>**ALSTON & BIRD LLP**<br>Brian D. Boone (*pro hac vice*)<br>101 South Tryon Street, Suite 4000<br>Charlotte, NC 28280-4000<br>Tel.:  (704) 444-1000<br>Fax:  (704) 444-1111<br>brian.boone@alston.com<br><br>**ALSTON & BIRD LLP**<br>Kimberly K. Chemerinsky (*pro hac vice*)<br>333 South Hope Street, Suite 16th Floor<br>Los Angeles, CA 90071<br>Tel.:  (213) 576-1000<br>Fax:  (213) 576-1100<br>kim.chemerinsky@alston.com<br><br>**ALSTON & BIRD LLP**<br>William Jordan (*pro hac vice*)<br>1201 West Peachtree Street NW, Suite 4900<br>Atlanta, GA 30309<br>Tel.:  (404) 881-7000<br>Fax:  (404) 881-7777<br>bill.jordan@alstonbird.com<br><br>*Counsel for Defendants UnitedHealth Group Incorporated, Optum, Inc., and OptumRx, Inc.* | **PENN, STUART & ESKRIDGE**<br>W. Bradford Stallard (VSB No. 28149)<br>Wade W. Massie (VSB No. 16616)<br>P.O. Box 2288<br>Abingdon, VA 24212<br>Tel.:  (276) 628-5151<br>Fax:  (276) 628-5621<br>bstallard@pennstuart.com<br>wmassie@pennstuart.com<br><br>**DECHERT LLP**<br>Judy L. Leone (*pro hac vice forthcoming*)<br>Will W. Sachse (*pro hac vice forthcoming*)<br>2929 Arch Street<br>Philadelphia, PA 19104<br>Tel.:  (215) 994-2979<br>Fax:  (215) 994-2222<br>judy.leone@dechert.com<br>will.sachse@dechert.com<br><br>*Counsel for Defendants Purdue Pharma, L.P., Purdue Pharma, Inc., and The Purdue Frederick Company, Inc.* |

| | |
|---|---|
| **HIRSCHLER FLEISCHER**<br>Jacqueline C. Hedblom (VSB No. 68234)<br>The Edgeworth Building<br>2100 East Cary Street<br>Richmond, VA 23223<br>Tel.:  (804)771-9500<br>Fax:  (804)644-0957<br>jhedblom@hirschlerlaw.com | **O'MELVENY & MYERS LLP**<br>Stephen D. Brody (VSB No. 40923)<br>1625 Eye Street, N.W.<br>Washington, DC 20006<br>Tel.: (202) 383-5167<br>sbrody@omm.com |
|  |  |
| **KOBRE & KIM LLP**<br>Steven G. Kobre (*pro hac vice*)<br>800 3rd Avenue<br>New York, NY 10022<br>Tel.:  (212) 488-1202<br>Fax:  (212) 488-1220<br>steven.kobre@kobrekim.com | **O'MELVENY & MYERS LLP**<br>Charles C. Lifland (*pro hac vice* forthcoming)<br>400 S. Hope Street<br>Los Angeles, CA 90071<br>Tel.:  (213) 430-6000<br>clifland@omm.com |
| **KOBRE & KIM LLP**<br>Adriana Riviere-Badell (*pro hac vice*)<br>Matthew I. Menchel (*pro hac vice*)<br>201 South Biscayne Boulevard, Suite 1900<br>Miami, FL 33131<br>Tel.:  (305) 967 6100<br>Fax:  (305) 967 6120<br>adriana.riviere-badell@kobrekim.com<br>matthew.menchel@kobrekim.com | *Counsel for Defendants Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.* |
| **KOBRE & KIM LLP**<br>Julian W. Park (*pro hac vice*)<br>150 California Street, 19th Floor<br>San Francisco, CA 94111<br>Tel.:  (415) 582-4800<br>Fax:  (415) 582-4811<br>julian.park@kobrekim.com |  |
| *Counsel for Defendants Express Scripts Holding Company and Express Scripts, Inc.* |  |

**HOGAN LOVELLS US LLP**
Jon M. Talotta (VSB No. 44590)
Park Place II, Ninth Floor
7930 Jones Branch Drive
McLean, VA 22102
Tel.: (703) 610-6100
Fax: (703) 610-6200
jon.talotta@hoganlovells.com

**HOGAN LOVELLS US LLP**
Rebecca C. Mandel (VSB No. 91936)
Adam K. Levin (*pro hac vice forthcoming*
555 13th Street, NW
Washington, DC 20004
Tel.: (202) 637-5600
Fax: (202) 637-5910
Rebecca.mandel@hoganlovells.com
adam.levine@hoganlovells.com

*Counsel for Defendant Mylan Pharmaceuticals, Inc.*

**MORGAN, LEWIS & BOCKIUS LLP**
James Kevin Fee (VSB No. 88376)
1111 Pennsylvania Avenue NW
Washington, D.C. 20004-2541
Tel.: (202) 739-3000
Fax: (202) 739-3001
kevin.fee@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
Steven A. Reed (*pro hac vice* forthcoming)
1701 Market Street
Philadelphia, PA 19103-2921
Tel.: (215) 963-5603
Fax: (215) 963-5001
steven.reed@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
Brian M. Ercole (*pro hac vice* forthcoming)
200 S. Biscayne Boulevard, Suite 5300
Miami, FL 33131-2339
Tel.: (305) 415-3416
Fax: (305) 415-3001
brian.ercole@morganlewis.com

*Counsel for Defendants Teva Pharmaceutical USA, Inc., Cephalon, Inc., Teva Pharmaceuticals Industries Ltd., and Barr Laboratories, Inc.*

**BASS, BERRY & SIMS PLC**
Sarah B. Miller (VSB No. 77087)
Jessalyn H. Zeigler (*pro hac vice* forthcoming)
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Tel.: (615) 742-6200
smiller@bassberry.com
jzeigler@bassberry.com

**ROPES & GRAY LLP**
Andrew J. O'Connor (*pro hac vice* forthcoming)
800 Boylston Street
Boston, MA 02199
Tel.: (617) 951-7000
andrew.o'connor@ropesgray.com

*Counsel for Defendant Mallinckrodt LLC*

**ARNOLD & PORTER KAYE SCHOLER LLP**
Ryan Watts (VSB No. 47513)
Tirzah S. Lollar (VSB No. 68145)
601 Massachusetts Avenue NW
Washington, DC 20001
Tel.: (202) 942-6609
Fax: (202) 942-5999
ryan.watts@arnoldporter.com
tirah.lollar@arnoldporter.com

**ARNOLD & PORTER KAYE SCHOLER LLP**
Jake R. Miller (*pro hac vice*)
777 South Figueroa Street, 44th Floor

Los Angeles, CA 90017
Tel.: (213) 243-4000
Fax: (213) 243-4199
Jake.miller@arnoldporter.com

|  | *Counsel for Defendants Endo Health Solutions, Inc. and Endo Pharmaceuticals, Inc.* |
|---|---|
| **CHRISTIAN & BARTON, LLP**<br>Michael W. Smith (VSB No. 01125)<br>S. Perry Coburn (VSB No. 78372)<br>Shannan M. Fitzgerald (VSB No. 90712)<br>909 East Main Street, Suite 1200<br>Richmond, VA 23219<br>Tel.:  (804) 697-4100<br>Fax:  (804) 697-4112<br>msmith@cblaw.com<br>pcoburn@cblaw.com<br>sfitzgerald@cblaw.com<br><br>**ZUCKERMAN SPAEDER LLP**<br>Conor B. O'Croinin *(pro hac vice* forthcoming)<br>100 East Pratt Street, Suite 2440<br>Baltimore, MD 21202<br>Tel.:  (410) 949-1160<br>cocroinin@zuckerman.com<br><br>**ZUCKERMAN SPAEDER LLP**<br>Dwight P. Bostwick (*pro hac vice forthcoming)*<br>R. Miles Clark  (*pro hac vice forthcoming)*<br>Eric R. Delinsky *(pro hac vice* forthcoming)<br>Alexandra W. Miller *(pro hac vice* forthcoming)<br>1800 M Street, NW, Suite 1000<br>Washington, DC 20036<br>Tel.:  (202) 778-1800<br>dbostiwck@zuckerman.com<br>mclark@zuckerman.com<br>edelinsky@zuckerman.com<br>smiller@zuckerman.com<br><br>*Counsel for CVS Health Corporation,*<br>*CVS Pharmacy, Inc.; Caremark Rx, L.L.C.,*<br>*CaremarkPCS Health, L.L.C. d/b/a*<br>*CVS/Caremark; Caremark, L.L.C., CVS TN*<br>*Distributions, L.L.C., and CaremarkPCS, L.L.C.* | **HOLLAND & KNIGHT LLP**<br>Leila S. George-Wheeler (VSB No. 90451)<br>800 17th Street NW, Suite 1100<br>Washington, DC 20006<br>Tel.:  (202) 469-5254<br>Fax:  (202) 955-5564<br>leila.george-wheeler@hklaw.com<br><br>**HOLLAND & KNIGHT LLP**<br>J. Matthew Donohue*(pro hac vice* forthcoming)<br>Joseph L. Franco*(pro hac vice* forthcoming)<br>2300 U.S. Bancorp Tower<br>111 S.W. Fifth Avenue<br>Portland, OR 97204<br>Tel.:  (503) 243-2300<br>Fax:  (503) 241-8014<br>matt.donohue@hklaw.com<br>joe.franco@hklaw.com<br><br>*Counsel for Defendant Insys Therapeutics, Inc.* |

| REED SMITH LLP<br>Justin M. Sizemore (VSB No. 71859)<br>Riverfront Plaza — West Tower<br>901 East Byrd Street, Suite 1900<br>Richmond, VA 23219<br>Tel.: (804) 344-3400<br>Fax: (804) 344-3410<br>jsizemore@reedsmith.com<br><br>*Counsel for Defendant AmerisourceBergen Drug Corporation* | WILLIAMS & CONNOLLY LLP<br>Ashley W. Hardin (VSB No. 68221)<br>725 Twelfth Street, NW<br>Washington, DC 20005<br>Tel.: (202) 434-5960<br>Fax: (202) 434-5029<br>ahardin@wc.com<br><br>*Counsel for Defendant Cardinal Health Inc.* |

**OTHER NOTICE IS BEING SENT TO THE FOLLOWING PARTIES VIA FIRST-CLASS MAIL, POSTAGE PREPAID:**

| Abbott Laboratories; Abbot Laboratories, Inc.<br>The Corporation Service Company<br>4701 Cox Road, Suite 285<br>Glen Allen, VA 23060<br>*Defendants* | Actavis Pharma, Inc.; Allergan PLC<br>Corporate Creations Network Inc.<br>6802 Paragon Place #410<br>Richmond, VA 23230<br>*Defendants* |
| Actavis, LLC; Allergan PLC<br>Corporate Creations Network Inc.<br>3411 Silverside Road, Suite 104<br>Wilmington, DE 19810<br>*Defendants* | Amneal Pharmaceuticals LLC<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br>*Defendant* |
| Amneal Pharmaceuticals, Inc.<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808<br>*Defendant* | Amneal Pharmaceuticals of New York, LLC<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br>*Defendant* |
| Rhodes Pharmaceuticals, L.P.<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808<br>*Defendant* | General Injectables & Vaccines, Inc.<br>Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, VA 23219<br>*Defendant* |
| Henry Schein, Inc.<br>Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, VA 23219<br>*Defendant* | Insource, Inc.<br>Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, VA 23219<br>*Defendant* |

| KVK-Tech, Inc.<br>c/o Frank Ripp, Jr.<br>110 Terry Drive<br>Newton, PA 18940<br>*Defendant* | Impax Laboratories, LLC<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808<br>*Defendant* |
|---|---|
| McKesson Corporation; McKesson Medical-Surgical, Inc.<br>Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, VA 23219<br>*Defendants* | Par Pharmaceutical Companies, Inc.<br>The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801<br>*Defendants* |
| Par Pharmaceutical, Inc.<br>CT Corporation System<br>111 Eight Avenue, 13th Floor<br>New York, NY 10011<br>*Defendant* | Walgreens Boots Alliance, Inc.<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808<br>*Defendant* |
| Walgreen Co.<br>Corporation Service Company<br>100 Shockoe Slip, 2nd Floor<br>Richmond, VA 23219<br>*Defendant* | Watson Laboratories, Inc.; Allergan PLC<br>Corporate Creations Network Inc.<br>8275 South Eastern Avenue, #200<br>Las Vegas, NV 89123<br>*Defendants* |

*/s/ Lauren Tallent Rogers*

**KAUFMAN & CANOLES, P.C.**
W. Edgar Spivey (VSB No. 29125)
wespivey@kaufcan.com
Patrick H. O'Donnell (VSB No. 29637)
phodonnell@kaufcan.com
R. Johan Conrod, Jr. (VSB No. 46765)
rjconrod@kaufcan.com
Lauren Tallent Rogers (VSB No. 82711)
ltrogers@kaufcan.com
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Tel:  (757) 624-3000
Fax:  (888) 360-9092